IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JANET TRAWICK,
on behalf of Plaintiff and
the class members described below,

   Plaintiff,        1:24-cv-09109

 vs.

CREDITNINJA LENDING, LLC,

   Defendant.

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiff Janet Trawick brings this action against CreditNinja Lending, LLC, to obtain redress from usurious loans arranged by it.

2. Plaintiff seeks damages under the Indiana Consumer Credit Code.

### JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are more than 100 class members. The amount in controversy, exclusive of interest and costs, exceeds $5 million on a classwide basis. Plaintiff is a citizen of Indiana. Defendant is a citizen of Illinois and Delaware.

4. This Court has personal jurisdiction over Defendant because it is located in Illinois.

. 5. Venue is proper for the same reason.

6. Article III of the Constitution of the United States is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing

-1-

statutes allowing 5% to 8% interest.

## PARTIES

7. Plaintiff is a citizen of Indiana and a resident of Indianapolis, Indiana.

8. Defendant CreditNinja Lending, LLC is a limited liability company organized under Delaware law with a principal address of 222 S. Riverside Plaza, Suite 2200, Chicago, IL 60606. Its registered agent and office is Registered Agent Solutions, Inc., 901 South 2nd Street, Suite 201, Springfield, IL 62704.

9. The managers of Defendant CreditNinja Lending, LLC are Mark A. Friedgan, Kenneth C. Shultz, and David S. Shorr. On information and belief, all are citizens of Illinois.

## FACTS

10. On or about June 3, 2024, Plaintiff obtained an $800 loan arranged by Defendant CreditNinja Lending, LLC, via the Internet. A copy of the loan agreement is attached as Exhibit A.

11. Plaintiff obtained the loan from www.CreditNinja.com, an online lending platform operated by Defendant.

12. Plaintiff obtained the loan for personal, family or household purposes.

13. The loan had a disclosed interest rate of 224.99%.

14. This rate is typical of the rates charged by CreditNinja Lending, LLC to residents of Indiana.

15. All rates charged by CreditNinja Lending, LLC to residents of Indiana exceed 36% per annum.

16. The loan was nominally made by Capital Community Bank, Provo, Utah.

17. Plaintiff disclosed her Indiana address on the loan application.

18. Plaintiff has paid usurious interest. The loan is still outstanding unpaid as of the filing of this action.

19. The loan agreement (Exhibit A) is written on a standard form.

20. The loan was obtained for personal purposes and not for business purposes.

21. The loan was made entirely via the Internet.

22. The principal amount was transferred to Plaintiff's bank account in Indiana via ACH.

23. The loans were to be repaid via ACH. Plaintiff made some payments. The loan is still outstanding.

24. Plaintiff made some of the payments, including interest. CreditNinja is seeking to collect the balance.

25. A significant majority of the transaction occurs within the State of Indiana – applying for the loans and receiving and collecting the funds.

## HOW CREDITNINJA LENDING, LLC ARRANGES LOANS

26. CreditNinja Lending, LLC, formerly known as KMD Partners, LLC, is a "FinTech" business that makes loans to consumers at rates illegal in most states.

27. While CreditNinja claims that Capital Community Bank is the lender, www.CreditNinja.com is owned and operated by CreditNinja Lending.

28. The website content is "(c) 2024 CreditNinja Lending, LLC. All Rights Reserved." (Exhibit B)

29. CreditNinja Lending, LLC makes loans to consumers in its own name in states which do not prohibit triple-digit interest rates on consumer loans.

30. However, in states, such as Indiana, which define the rates charged by CreditNinja Lending, LLC as usurious, CreditNinja Lending, LLC "partners" with a bank: either Capital Community Bank or First Electronic Bank, both of which are located in Utah, a state which does not cap interest rates.

31. Supposedly, Capital Community Bank originates the loan and then assigns it to CreditNinja Lending, LLC for "servicing."

32. In fact, CreditNinja Lending, LLC:

   a. Advertises for and obtains borrowers;

-3-

      b.      Directs the marketing for the loans;

      c.      Directs the underwriting of the loans;

      d.      Conducts the servicing and collection of the loans.

33. Capital Community Bank merely receives a guaranteed fee per loan for renting its name and status as a bank to CreditNinja Lending, LLC.

34. At no point is Capital Community Bank's capital at risk. CreditNinja Lending, LLC acquires the loan immediately after it is made and pays Capital Community Bank about 5% of the value of the loan, regardless of whether the consumer repays the loan.

35. CreditNinja Lending, LLC indemnifies Capital Community Bank against any losses.

36. In a complex series of transactions, CreditNinja Lending, LLC causes the money "loaned" by Capital Community Bank to be repaid.

37. CreditNinja Lending, LLC then acquires servicing rights for the loan, collecting usurious interest from consumers.

38. CreditNinja Lending, LLC thus has the predominant economic interest in the loans.

39. The arrangement is colloquially known as a "rent-a-bank" scheme.

40. However, at no point is Capital Community Bank the true lender of the CreditNinja accounts, nor is any capital belonging to Capital Community Bank at risk.

41. Such "rent-a-bank" schemes simply allow predatory lenders like CreditNinja to make loans to consumers in states which prohibit usury, including Indiana, with a modicum of legal cover. Capital Community Bank, as a state-chartered bank, can assert pre-emption under federal law to Indiana anti-usury statutes, and it can export the lack of interest caps in its home state of Utah lend to borrowers in other states with stricter usury laws.

42. Capital Community Bank had virtually nothing to do with the marketing, underwriting, servicing, and/or collection of the Account, and has engaged in a "rent-a-bank" scheme with Defendant.

43. In "rent-a-bank" schemes, predatory lenders like CreditNinja launder

their loans under the guise that the loan is made by a bank.

44. While such "rent-a-bank" schemes have several different variants, they all have several common features:

    a. The design of the loan product, including the name of the product (e.g., CreditNinja) is proposed by a nonbank to the bank;

    b. The bank outsources all or nearly all activities relating to the loan, including marketing, underwriting, funding, and servicing;

    c. These services are outsourced to a single nonbank entity (e.g., Enova and its related subsidiaries); and,

    d. There is a transfer of all or almost all of the credit risk on the loans either to the nonbank and related subsidiaries directly, or to third-party "investors" through transactions arranged by the nonbank.

45. Essentially, the nonbank and its affiliates initiate the relationship, propose all aspects of the loan process be outsourced to it, provide all or nearly all of the factors necessary to make the loans, and then acquire most of the economic interest in the loans to facilitate the off-loading of those interests to a third party, creating a modest, but guaranteed, profit for the bank on each loan.

46. The consumer-facing website CreditNinja.com discloses that in some states, such as Delaware, California and Texas, CreditNinja loans are made or arranged by CreditNinja Lending, LLC.

47. In sum, CreditNinja, and not Capital Community Bank, is the true lender of Plaintiff's loan, because it has the predominant economic interest in loans made to consumers like her. *Ubaldi v. SLM Corp.*, 852 F.Supp.2d 1190 (N.D.Cal. 2012); *Eul v. Transworld Sys.*, 15cv7755, 2017 U.S. Dist. LEXIS 47505, at *22-23, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017); *Eastern v. American West Financial,* 381 F.3d 948, 957 (9th Cir. 2004); *CashCall, Inc. v. Morrisey*, 2014 W. Va. LEXIS 587, 2014 WL 2404300, at *14 (W.Va. May 30, 2014); *People ex rel. Spitzer v. Cty. Bank of*

*Rehoboth Beach, Del.*, 45 A.D.3d 1136, 846 N.Y.S.2d 436, 439 (N.Y. App. Div. 2007); *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 15cv7522, 2016 U.S. Dist. LEXIS 130584, at *16, 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *BankWest Inc. v. Oxendine*, 266 Ga.App. 771, 598 S.E.2d 343 (2004); *BankWest, Inc. v. Baker*, 324 F.Supp.2d 1333 (N.D.Ga. 2004); *Commonwealth of Pennsylvania v. Think Fin., Inc.,* 14cv7139, 2016 U.S. Dist. LEXIS 4649, at *40, 2016 WL 161597 (E.D. Pa. Jan. 14, 2016); *Solomon v. American Web Loan*, 4:17cv145, 2019 U.S. Dist. LEXIS 48420, 2019 WL 1320790 (E.D. Va. Mar. 20, 2019); *Meade v. Marlette Funding, LLC,* 17cv30376 and 30377, 2018 Colo. Dist. LEXIS 3856 (Dist. Ct., Aug. 13, 2018), later opinion, 2018 Colo. Dist. LEXIS 4042 (Dist. Ct., Aug. 14, 2018); *State v. CashCall, Inc.*, 27cv13-12740, 2013 Minn. Dist. LEXIS 31 (Hennepin Co., Sept. 6, 2013)*; State ex rel. Cooper v. Western Sky Fin., LLC,* 13cvs16487, 2015 NCBC 84, 2015 NCBC LEXIS 87 (N.C.Super. Ct., Wake Co., Aug. 27, 2015); *Terry v. Community Bank of Northern Virginia,* 255 F.Supp.2d 817, 822 (W.D.Tenn. 2003).

48. After an account is assigned to CreditNinja, it then proceeds to collect usurious interest and fees from consumers.

49. CreditNinja Lending, LLC thus obtains the predominant economic interest in the loan, i.e., 95% to 100%.

50. CreditNinja Lending, LLC markets, brokers, arranges, and facilitates the loan and has the right to obtain the 95% to 100% interest in the loans.

51. Capital Community Bank has a website that offers its customers personal loans, [https://ccbank.com/personal-loans,](https://ccbank.com/personal-loans) but it does not mention the high-interest loans at issue here. These can only be obtained through CreditNinja Lending, LLC, and not through Capital Community Bank directly.

52. In an attempt to evade the Indiana Consumer Credit Code, CreditNinja Lending, LLC's agreements provide for arbitration and require the arbitrator to apply Utah law.

53. Such provision is an impermissible prospective waiver of statutory rights under the Indiana Uniform Consumer Credit Code, and is invalid.

## INDIANA REGULATION OF LENDING

54. The Indiana Uniform Consumer Credit Code, Ind. Code § 24-4.5-3-201, establishes a maximum loan finance charge of 36% per annum for consumer loans other than supervised loans.

55. For loans other than supervised loans, Ind. Code § 24-4.5-3-201 provides:

(1) Except as provided in subsections (7) and (9), with respect to a consumer loan, other than a supervised loan (as defined in section 501 [IC 24-4.5-3-501] of this chapter), a lender may contract for a loan finance charge, calculated according to the actuarial method, not exceeding twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter). . . .

56. With respect to supervised loans, the Indiana Uniform Consumer Credit Code, Ind. Code § 24-4.5-3-508, provides:

Loan finance charge for supervised loans.

(1) With respect to a supervised loan, including a loan pursuant to a revolving loan account, a supervised lender may contract for and receive a loan finance charge not exceeding that permitted by this section.

(2) The loan finance charge, calculated according to the actuarial method, may not exceed the equivalent of the greater of:

    (a) the total of:

        (i) thirty-six percent (36%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter) which is two thousand dollars ($2,000) or less;

        (ii) twenty-one percent (21%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than two thousand dollars ($2,000) but does not exceed four thousand dollars ($4,000); and

        (iii) fifteen percent (15%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than four thousand dollars ($4,000); or

    (b) twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) of this chapter). . . .

57. There is also a provision for small loans, Ind. Code § 24-4.5-7-101 *et seq.*, but it requires that small loans conform to other requirements that Defendants' loans do not comply with.

58. Ind. Code. § 24-4.5-7-201, "Limitations on finance charges," provides:

(1) Finance charges on the first two hundred fifty dollars ($250) of a small loan are limited to

fifteen percent (15%) of the principal.

(2) Finance charges on the amount of a small loan greater than two hundred fifty dollars ($250) and less than or equal to four hundred dollars ($400) are limited to thirteen percent (13%) of the amount over two hundred fifty dollars ($250) and less than or equal to four hundred dollars ($400).

(3) Finance charges on the amount of the small loan greater than four hundred dollars ($400) and less than or equal to five hundred fifty dollars ($550) are limited to ten percent (10%) of the amount over four hundred dollars ($400) and less than or equal to five hundred fifty dollars ($550).

(4) The amount of five hundred fifty dollars ($550) in subsection (3) is subject to change under the provisions on adjustment of dollar amounts (IC 24-4.5-1-106). However, notwithstanding IC 24-4.5-1-106(1), the Reference Base Index to be used under this subsection is the Index for October 2006.

59. The amount of finance charge provided for in Exhibit A exceeds that permitted in Indiana under any provision.

60. Ind. Code Ann. § 24-4.5-1-201, "Territorial application," provides:

(1) Except as otherwise provided in this section, this article applies to sales, leases, and loans made in this state and to modifications, including refinancings, consolidations, and deferrals, made in this state, of sales, leases, and loans, wherever made. For purposes of this article, the following apply: . . .

 (c) A loan or modification of a loan agreement is made in this state if a writing signed by the debtor and evidencing the debt is received by the lender or a person acting on behalf of the lender in this state.

 (d) Except as provided in subdivisions (e) and (f), a sale, lease, or loan transaction occurs in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction with a creditor or a person acting on behalf of the creditor in another state and the creditor or the person acting on behalf of the creditor has advertised or solicited sales, leases, or loans in Indiana by any means, including by mail, brochure, telephone, print, radio, television, the Internet, or electronic means.

 (e) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction secured by an interest in land located outside Indiana.

 (f) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction at a creditor's place of business in another state.

For purposes of subdivisions (a) through (c), an offer is received by a creditor or a person acting on behalf of the creditor in Indiana if the offer is physically delivered, or otherwise transmitted or communicated, to a person who has actual or apparent authority to act for the creditor or the person acting on behalf of the creditor in Indiana, regardless of whether

approval, acceptance, or ratification by any other agent or representative of the creditor or the person acting on behalf of the creditor in another state is necessary to give legal consequence to the consumer credit transaction. . . .

(5) Notwithstanding other provisions of this section:

>  (a) except as provided in subsection (2), this article does not apply if the buyer, lessee, or debtor is not a resident of this state at the time of a credit transaction and the parties then agree that the law of the buyer's, lessee's, or debtor's residence applies; and

>  (b) this article applies if the buyer, lessee, or debtor is a resident of this state at the time of a credit transaction and the parties then agree that the law of this state applies.

(6) Except as provided in subsection (5), the following agreements by a buyer, lessee, or debtor are invalid with respect to consumer credit sales, consumer leases, consumer loans, or modifications thereof, to which this article applies:

>  (a) An agreement that the law of another state shall apply.

>  (b) An agreement that the buyer, lessee, or debtor consents to the jurisdiction of another state.

>  (c) An agreement that fixes venue. . . .

(8) If a creditor or a person acting on behalf of the creditor has violated the provisions of this article that apply to the authority to make consumer loans (IC 24-4.5-3-502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge, as set forth in IC 24-4.5-5-202.

61. Ind. Code 24-4.5-1-107 prohibits waiver by the consumer of rights under the

Uniform Consumer Credit Code:

Waiver — Agreement to forego rights — Settlement of claims.

(1) Except as otherwise provided in this Article, a buyer, lessee, or debtor may not waive or agree to forego rights or benefits under this Article.

(2) A claim by a buyer, lessee, or debtor against a creditor for an excess charge, other violation of this Article, or civil penalty, or a claim against a buyer, lessee, or debtor for default or breach of a duty imposed by this Article, if disputed in good faith, may be settled by agreement.

(3) A claim, whether or not disputed against a buyer, lessee or debtor may be settled for less value than the amount claimed.

(4) A settlement in which the buyer, lessee, or debtor waives or agrees to forego rights or benefits under this Article is invalid if the court as a matter of law finds the settlement to have been unconscionable at the time it was made. The competence of the buyer, lessee, or debtor, any deception or coercion practiced upon him, the

      nature and extent of the legal advice received by him, and the value of the consideration are relevant to the issue of unconscionability.

62.    Ind. Code § 24-4.5-5-202, "Effect of violations on rights of parties," provides:

. . . (3) A debtor is not obligated to pay a charge in excess of that allowed by this Article, and **if the debtor has paid an excess charge the debtor has a right to a refund**. A refund may be made by reducing the debtor's obligation by the amount of the excess charge. If the debtor has paid an amount in excess of the lawful obligation under the agreement, the debtor may recover the excess amount from the person who made the excess charge or from an assignee of that person's rights who undertakes direct collection of payments from or enforcement of rights against debtors arising from the debt.

(4) **If a debtor is entitled to a refund and a person liable to the debtor refuses to make a refund within a reasonable time after demand, the debtor may recover from that person a penalty in an amount determined by a court not exceeding the greater of either the amount of the credit service or loan finance charge or ten (10) times the amount of the excess charge. If the creditor has made an excess charge in deliberate violation of or in reckless disregard for this Article, the penalty may be recovered even though the creditor has refunded the excess charge.** No penalty pursuant to this subsection may be recovered if a court has ordered a similar penalty assessed against the same person in a civil action by the department (IC 24-4.5-6-113). With respect to excess charges arising from sales made pursuant to revolving charge accounts or from loans made pursuant to revolving loan accounts, no action pursuant to this subsection may be brought more than two (2) years after the time the excess charge was made. With respect to excess charges arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made. . . .

(7) If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error, no liability is imposed under subsections (1), (2), and (4) and the validity of the transaction is not affected.

(8) In any case in which it is found that a creditor has violated this Article, the court may award **reasonable attorney's fees** incurred by the debtor. . . . (Emphasis added)

63.    The excessive interest charges imposed by Defendant were willful. Enova's 10-K states (original page 26) that ". . . There have also been numerous litigation and enforcement actions that challenge the status of the issuing bank partner as the "true lender" of the loan in question. . . . If we were deemed by a court to be the 'true lender' of any loans originated by the issuing bank partner, it could impact the enforceability of the loans; it could subject us to regulatory investigations, penalties and fines; we might have to alter the terms of the loans we broker; it could create challenges for our capital markets and securitization models; we would have to change the way we do business in such jurisdictions; and we may suffer an adverse impact on our business."

Defendant thus undertook what it knew to be a course of conduct that presented substantial risk of illegality.

64. Loans to Indiana residents made in the same manner as the loan to Plaintiff is governed by the laws of the State of Indiana.

## COUNT I – INDIANA UNIFORM CONSUMER CREDIT CODE

65. Plaintiff incorporates paragraphs 1-64.

66. Because the loan made to Plaintiff violated the rate limits set by Indiana law, and the violation was intentional, Plaintiff and other borrowers are entitled to ten (10) times the amount of the excess charge.

## CLASS ALLEGATIONS

67. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

68. The class consists of (a) all individuals with Indiana addresses (b) for whom a loan was arranged by CreditNinja at more than 36% interest (c) on or after a date two years prior to the filing of this action.

69. Plaintiff may alter the class definition to conform to developments in the case and discovery.

70. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

71. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

72. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

73. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

74. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Statutory damages;

    ii. Attorney's fees, expenses and costs; and

    iii. Such other or further relief as is appropriate.

*/s/Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Heather Kolbus
Lucas M. Coughlin
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

*/s/Daniel A. Edelman*
Daniel A. Edelman

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

>  */s/ Daniel A. Edelman*
>  Daniel A. Edelman

**DOCUMENT PRESERVATION DEMAND**

      Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman